Would the attorneys that are going to present oral argument please step up and identify each of you will have about 15 minutes to present oral argument and from that Ms. Wonder you may save out some time for rebuttal, all right? I'd like to reserve 5 minutes for the rebuttal time then and so I'll speak for about 10 minutes. All right. Thank you. And with that I'll turn it over to Ms. Wonder. This case actually has a very extensive history and so I'd like to start by clarifying what's actually at issue here and then talking about that in greater detail. Some issues have already been settled. This court has previously determined that the debris at the landfill is waste that's been illegally dumped because a disposal permit was required and not obtained so that's settled. It's also been established that certain defendants who I'm going to call the operator defendants are liable for violating the Environmental Protection Act and nothing here revisits any of that. Has that been resolved in the circuit court? In the circuit court and the appellate court that's resolved. Is the property now primarily the issue in this appeal is whether what I'm going to call the owner defendants are liable also for violations of the Act and the owner defendants point to the operator defendants and say, well, those are the people who are violating the Act. They are the operators. They did the day-to-day operations. We're just the people on the sidelines. We're just expecting to get our dumping royalties and so what I'd like to address in more detail is that the people believe that the owner defendants have their own statutory responsibilities that they can't simply contract away. And so for certain violations, the owner defendants liability follows very readily from the statutory language, the purposes of the Act and the case law that's developed. I'd like to talk about that and then I'd also like to address some of the owner defendants' main contentions. And are we looking at the word to allow and then what the courts interpret allow to make? Yes, we are. Let's start with that. So we're looking at allowing, not just causing but causing and allowing. And allowing contemplates a broad liability and that's shown by the plain meaning of the word allow in the Act which includes neglecting to prevent, neglecting to restrain. The Act gets a liberal construction. It's shown by reading the Act as a whole because you have section 45D of the Act which talks about situations where the state might bring in enforcement action against an owner for allowing open dumping and then talks about when the owner can bring in third party claims. So that shows a legislative recognition that such claims would be there. And the broad liability is also shown by the guidance that's provided by the Illinois courts. What do the courts use? The courts have explained that a person violates the Act if they simply have the capability to exercise control over the source of the pollution. And that's, I think that standard has been well explained by the Illinois Pollution Control Board. I'm just going to quote from a case early in its history and this is in the case cited in the briefs. And the board says the statute makes it unlawful not only to cause but also to allow pollution. And that's really what we're looking at. We're not, are you arguing that they also cause this or are you focusing on allow? You could make an argument that they would cause it, but we're talking about allowing because that's a broader liability. And what the board has said about that is we think this language, allowing, goes beyond the common law and imposes an affirmative duty on persons in a position of potential control to take action to prevent pollution. And that's from one of the actual board decisions. Yes. And the owner defendants say in a variety of ways, well, we're not the operators. You know, we didn't, we weren't involved in that. What's your best case for an owner who's not an operator to be held under these circumstances? What's your best case? Can I give them all one? Because I think it depends on the difference. Well, sure. Give us all your great cases. Some of them, I mean, Gonzales. We know in our Supreme Court case, Fiorini, which talks about the general standard, Gonzales is another case that specifies That's the Speedy Gonzales company, right? Yes. Yes. He was an owner. He was an owner operator slash, wasn't he? Yes. It talks about what the standard is there. It talks about the standard. And it also, in Gonzales in particular, it talks about one thread of owner liability that simply has to do with failing to clean up a site. It talks about the standard of capacity to the pollution, what that means. And it also talks about how specifically one thing it means is failing to clean up a site. And that hasn't happened here either. That's one part of liability. Another case that Is that your number one case, Gonzales? Yeah, I would say so. And also Was he an owner operator? The part of his, his liability Was he, I mean, is that a difficult question? I'm not sure. Was he an owner slash operator, that gentleman? He was performing some operational functions, but that had nothing to do with his liability as an owner. Did he own the property? Yes, he did. And part of his liability simply had to do with his failure to clean up the site from waste that had been dumped there by others. And that's one form of liability that we have here. That's a liability But that's flood dumping, which is different from a contractual right that the, that, that Lincoln had. That's flood dumping in that case, but what it addresses is a landowner's duty to clean up waste that has been put on site, even if they don't put it there. That comes out in Gonzales. It comes out in a number of board cases, which are all talking about owner liability and not operator liability. Schaefer is another one, and there are other board cases that are discussed in the briefs. So, is it your position that we should determine as a matter of law that they allow this, or should we send this back for a trial because there's questions of material fact? It's our position that you should determine as a matter of law that the open dumping has been allowed. In what case did you decide? If you disagreed, at minimum, then if you find fact questions, you should send it back. Oh. And the cases I would cite are all the cases in the brief that I've discussed that set out the standard, and many of those in particular talk about an owner's, they set out the standard, that standard applies to what the owners have done here, and then the cases also specifically address a landowner's duty to clean up, to remedy waste that has been put on their land by others, that is part of allowing liability. So, did you ever move in court to require land of Lincoln Development to get in there and clean this up? Did you ask for that? We've been trying to do that, yes. Okay, but you know what, a number of judges, it's amazing how many judges went through this case in the circuit court, but, I mean, are you telling me that you've been trying to do it, but something prevented you from getting a judge to say one way or the other, land of Lincoln Development, now that it's been there, and, you know, you've permitted it, so to speak, we want you, or we're ordering you, we're enjoining you to get in there and get this stuff out. Now, did you ask the circuit court for that? And you're asking about the owners now? Yeah, asking about the owners of Lincoln Development Company. Well, we thought the owners' liability had been resolved back in 2007. Yes, and why did you think that? What gave you that impression? Because the summary judgment motion went to all of the defendants. What was your request for? The summary judgment motion was to determine that the waste, excuse me, that the debris placed on the site was waste. Okay. Because that was evidence that a permit was needed. All right. And we wanted that question answered. That was the partial summary judgment question that went to the appellate court in 2008. The appellate court said, yes, it is waste, it needs a permit. All right. But tell me how did that... And the arguments were brought against all the defendants, and we thought, okay, now that we know it's waste, all the defendants are liable. That was what our summary judgment motion said. Subsequently, a different circuit court judge, who's not the judge who entered the summary motion, went back and looked and said, I'm not clear on this. Give me additional briefing on whether the issue of liability of the owner defendants has been resolved. Well, could I please interrupt you once more? When you got a determination that it was waste, and then the matter came up here, and we decided it was indeed waste, what judge had ever told you that all of the defendants are liable? We thought that that was resolved by the circuit court's summary judgment order, Judge Bronstein's order, back in 2007. And again, that was focused on the fact that the counts were against the all of the defendants, and the summary judgment motion established that a violation of the act had occurred. Did the summary judgment motion determine that, or was the issue partial summary judgment on whether or not the materials that were being placed there were waste? As I recall, that's what we decided when we affirmed the partial summary judgment ruling. I don't recall anyone arguing to us that this court should conclude that every party is liable. No one did argue that to you, because we thought that that had implicitly, by what we said in our summary judgment motion, and the fact that it was brought against all the defendants, and that the counts were brought against all the defendants, and the language in the summary judgment motion had been resolved. The court ultimately looked back at what happened and said, the new circuit that's so clear. Give me some briefing on this. We gave briefing on why we thought the issue had been resolved back in 2007, and also by the owner-defendant's actions since 2007. The court said, no, that's not clear. This is an issue that remains for trial. And after that occurred, there was an amended complaint that went into more detail, and then there was a round of summary judgment briefing on the owner's liability, and here we are. But we thought that that was an issue that had been determined a long time ago. And with that, we have the question of whether the owners are in fact liable. I said one way, one type of allowing liability is this failure to clean up. And that's clear from Gonzales and a number of board cases, and that's a duty that the landowner has to remedy pollution that's on their land. Did this duty arise as soon as you told them that you need a permit? When did it first arise? The duty to clean up? Yes. Does the court have to say something about that, or is this something that's a fiat that is entered because the Attorney General sends a letter saying you need a permit? Once they're on notice of a violation, then yeah, they do have to remedy it. But certainly now we're looking at ways to ask you, is there a case that actually says that what you're saying, that if the Attorney General sends a letter to someone saying that, you know, it's our opinion that you're operating without a permit, therefore, ergo, you need to clean it up today? Courts don't have anything to do with this? Or is this just a matter of law? Well, the question is whether they're violating the act. Sure. Who decides that? Well, I think there's a difference between an adjudication of liability, which might happen later on, and receiving a violation notice, which puts you on notice that your actions are violating the act. Now, if you choose to do nothing after you're on notice that your actions are violating the act, then... All right, well, I'm kind of losing something here about, let's say for example, that a court subsequently determined that there wasn't a permit needed, or what they were doing wasn't in violation of the act. I don't understand how you can say that if we tell you, if we send you a letter that there's a duty as a matter of law from that moment forward that you clean up your mess. The violation notices show that they were on notice of a violation, that it was opposition that the act was being violated. Okay. What establishes their liability is that... Is what? Their capacity to exercise control over the site, over the pollution at the site, and the fact that they did not take steps to avoid the pollution. But does someone have to determine that, like the courts? I mean, I'm not sure how you can stand here and tell us that they had to clean this up when we sent them a letter, and that's when their duty arose. Where is a case that says that? The duty comes from their statutory responsibility to avoid causing or allowing open dumping of waste. I mean, for example, this court didn't say a permit was needed until 2008. That doesn't mean that the act wasn't being violated until 2008. The act was being violated when the open dumping was occurring, when all the other violations were occurring. So the violations were occurring when the violations were occurring. I'm just wondering if there's any cases that actually say what you're saying. In other words, that the offense of not cleaning it up or allowing it began when we say it began. I'm not sure I understand that any cases say what you're saying. That's all. I think that falls from the cases that set out the standard. You're violating the act if you have the capacity to exercise control over the source of pollution on your land and you don't do so. So your position, in other words, is that the violation occurred on day one. As soon as they began disposing of waste without a permit, they were violating the act. Not when you contacted them and said, hey, I think you contacted them about four months later. You're saying on day one it happened. Is that what you're saying? Yes. I'm saying we need to look at, let's look at the standard, the capacity to exercise control. And wouldn't we have to conclude that at some point? Doesn't a court of law have to tell them that this is when you allowed this, not the Attorney General? Isn't that really kind of how things work? That this court would say that the beginning of allowing this occurred on a certain date. It's not something that the Attorney General decides. It's something that a court would say. Again, I think that the liability for the violations was when the violations occurred. And we could argue about whether it's really a violation. Somebody has to make that decision and I don't think it's on that side of the bench. That's all. Then let's look at, and I'd like to move on to the other steps briefly. I've already overstepped my time. But looking at the allowing liability for failing to clean up, the court has said this is waste. The court has said that since 2008. The operator defendants have been gone from the site since 2007 and the waste remains. By any standard now, whatever their defenses might be, they have control over the source of the pollution. They have control over the waste that is sitting on their land and they have failed to clean it up. That in itself is a violation because it is allowing open dumping under the Act. Did the trial court ever proceed to your request to force Land of Lincoln to move that debris, that waste? That's one of the things that's going on now. Why is it taking so long? Because we got set back by their saying the removal is a remedy that we are seeking and we got set back by the owner defendant saying we're not liable for any of the violations under the Act. How does that in any way prevent the circuit court from telling Land of Lincoln that you have to remove this today? Why hasn't the court been able to do that? We'd be very happy if the court did that. But why hasn't it? Did you ask the circuit court to order Land of Lincoln to remove the waste? Yes. We have filed a motion for a permanent injunction that seeks, among other remedies, removal of the waste. The court has not granted it and the court has said I'm not looking at that question until the liability of the owner defendants is resolved. Specifically, what part of the statute requires an owner to remove waste even if they did not put it there? Because an allow language does that. And the allow language, one thread of the allowing, is allowing an illegal situation to continue. And the board has made cases that have determined that that allowing language creates a landowner's obligation to remove an accumulation of waste on their land even if it has been put there by others. And that Does that ban allowing active dumping or does it cover removal of past acts? Because I'm reading one of the cases, Gonzalo's case, where they say we're not going to find liability after they put up a lock gate. They haven't put up a lock gate here. Here, I think we have. But it goes to the point of And then it goes to have they taken these kind of extensive measures to prevent it? And no, we don't believe that's happened here. And now, the waste has been there for years. But if you follow your theory, if you look at what Gonzalo says, whether they allowed it or not, if you're the owner, you have to remove it. But where as Gonzalo's, they seem to be saying something different. If you put a fence up and try to do it, well, we're not going to say you're in violation after you put the fence up. So Because the putting the fence up There's strict liability as a consequence of ownership. In that sense, you would look at there is a potential defense of taking extensive measures to prevent or remedy the accumulation of waste. And they haven't done that here. The waste has been sitting there for years. The difference is that contractually, we didn't control this. If we wanted to do anything, we'd have to go to court just as the state could have gone to court. And we didn't allow it because we couldn't have done anything. We would have to go get a court order to do it. So we didn't control it. And that's their defense. And they're using the contract saying, I'll speak for a minute about the contract. I'm way over my time now. The contract doesn't, they can't use the contract to avoid their statutory obligations. The contract and the statute are two different things. And they can't just put boilerplate language into the contract that shifts their environmental responsibilities. They say, to the extent they want to say the contract limits what we could do, it has to be kept in mind that they structured the contract. They decided what terms would be in the contract. They could have put any terms there. So they can't tie their own hands and then say, oh, we can't do anything because our hands are tied. Could you give us the primary facts that you believe supports granting summary judgment as a matter of law? What did they do? Besides, give us some of this control information. Okay, let's go through the statutory standard and how it applies here. And it applies in, I think, two independent ways. One of which I've discussed is that the landowner has a duty to clean up their property, to bring the site back into compliance. That hasn't been done. Any arguments that we didn't have the control, we couldn't do anything, I don't agree with that. But that hasn't been true for years. Since 2007, the operators have been gone. The waste remains. They have a duty to clean up. That's one way. The other way is let's step back and look at it. You've been spending 10 years in the courts and nobody seems to be able to get anybody to say that you have to do this. But what did they do? Again, we thought that wasn't enough. So that's one way that there's a law on liability. There's another way that there's a law on liability which also flows from the capacity to exercise control over the source of the pollution. Here's what happened. Here's how they had that. There, we look back to before the lawsuit was filed. They start with, we did all this stuff when the lawsuit was filed. What happened before the lawsuit was filed? They had the capacity to exercise control over whether their property was used as a waste dump. They decided. They had control over how their property was used. They made discretionary choices. That's what establishes their capacity to control. They decided they wanted a landfill. They wanted to do it in disguise. Here's what our contract's going to say. We're going to shift all responsibility on them and just get the dumping royalties. We're not going to ensure that a permit is in place before anything starts. So they should have put that in their contract. That's certainly one of the things they could do. Make sure that permit was in place before anything. They did require that a permit be in place by their tenant, right? They did require a permit in place. They said, follow all the laws. General language, follow the laws. But they never followed up. General language, they never followed up. And then they were on notice at some point. And that's where the violation notices come in. I'm not saying there was some adjudication of liability. But the violation notices put them on notice that the agency believes a permit is needed here. So they knew that. And they still did nothing to get a permit or to make the operator defendants get a permit all before the lawsuit was filed. And those discretionary choices that they made, particularly after having been notified that there was a problem and doing nothing, that is a violation of the act. That is allowing open dumping. And they are liable for those actions along with the operator defendants. It has nothing to do with whether the operators were, excuse me, whether the owners were involved in the day-to-day operations, which is the focus that they wanted to put on it. Do your stipulations hamstring you in any way? No. Because they say you don't even talk about them in your brief, which is actually quite true, isn't it? You don't mention these stipulations you entered into? Well, I'm not hiding from anything in the stipulations because the stipulations... Here's my question then. They don't really put you up against a wall in any way? No, because the stipulations go to whether the owners were involved and responsible for the day-to-day operations. They're not the operators. We're not saying they're the operators, but we're also saying that their liability does not depend on their being the operators. The main stipulation that would cause some concern is probably that the LOLDC defendants had no management or maintenance responsibility. Yes. That's not the same as control. It's not the same as capacity to control over the source of the pollution. It's not the measure... That's probably the biggest stipulation that would be of any concern, but it doesn't really stipulate to... It doesn't get to their liability for allowing open dumping. Okay. Why would you let them join in your motion for a preliminary injunction and act like, you know, they weren't the bad guys and then seven years later up out, you're asking summary judgment against them? Why did you let them join in that request? Well, I would just search through the record to find out what joining in the summary judgment... Well, why didn't you say they have no business with these judges? We're the ones seeking the injunction and, you know, they're responsible parties. They're completely liable. I mean, why not interpose something then? I think joining in the summary judgment motion simply means they made some type of oral representation to the court that says, we too, we would like them to stop... Well, they couldn't do anything except arbitrate. So they, at least at that point, did the contract provide that. But they actually joined in the request for the injunction, didn't they? They made the... There's a stipulation that says that and I presume that's based on an oral representation that they made to the court that says, we too, we agree with the state. And again, just like sending those initial demand letters stop operating, none of that happened until after the lawsuit was filed. A very relevant time frame here is before the lawsuit was filed. And I think when you look at what happened before the lawsuit was filed, that demonstrates their capacity to exercise control over the source of the pollution through the choices they made about their land, the type of contract they entered, their failure to ensure their permit was in place or require the operators to get a permit before anything happened. All of that goes to their capacity to control. Even after the lawsuit was unfiled, they didn't get a permit. They continued to get dumping royalties. And then we have the situation today where the waste is still there, the operators are long gone, and they have not taken any steps to clean up the site that we are trying to bring about. Counsel, if we have a situation here where you have a landowner and then you have an operator on the land and we're holding the landowner... I think we all agree the landowner was not involved in the day-to-day operations of the waste dumping. What do you say to the argument that what you're seeking here is strict liability against the landowner? How is this not strict liability? I say it's absolutely not strict liability. It is liability because they have the capacity to exercise control over the dumping and they didn't do so. It wasn't like a tornado blew the waste onto their land. They're liable because of their own acts and emissions. They invited this pollution onto their land. Holding someone responsible for their voluntary business decisions is not strict liability. That's not the standard that we're arguing. It is a broad liability. Any landowner who enters a deal and decides on the terms and doesn't ensure the permits in place, yes, those people would be liable. I think that's exactly what the Act contemplates. That's the nature of allowing liability. They'll be troubling if they didn't have DS responsibilities. We will give you some more time. Yes, sorry. And with that, I will conclude for now. Thank you.  that you asked that weren't, Your Honor, I think it's important to put this case in perspective first, particularly what you're being asked to do here. First, you're not being asked to overturn two decisions from one judge. You're being asked effectively to overturn four decisions from three judges. We start with Judge Mark. Well, the people wore them out. That's all we can say. We went through if memory serves, including one SOJ motion, six judges over the 14 days. But there's only one judge that ruled as far as I understand that the Land of Lincoln Development Company did not allow for, no, I think it was Judge Atkins. Actually, if I may, Your Honor. And it really doesn't matter whether one or more entered this. Correct. If they're wrong, they're wrong. It actually was three judges. It was Judge Hagren in July 2010. It was Judge Coynew in the prior decision in this case. The royalty agreement in the case at bar is not illegal or against public policy. Then there's Judge Preston, March 21, 2012. The transcript provided did not support the assertion that LOLDC permitted Lincoln to operate illegally. It seems clear from this description that LOLDC did not allow Lincoln to operate illegally. And then finally the two rulings from Judge Atkins. LOLDC did not cause or allow any illegal operation of the facility through Lincoln. LOLDC cannot have been the operator of the facility. You can argue that was law of the case. If we determined that, wouldn't that have been something that they could have appealed? Or by not appealing, isn't that law of the case? I didn't argue law of the case, Judge, because frankly law of the case is such a fuzzy concept. It's far too easy for... But aren't you saying right now today that when we issued that order in the interlocutory appeal that we made a conclusion or we determined as a matter of law that the land of Lincoln Development Company was not liable? No. Because you didn't do that. What did you disagree? What I read were rulings from the three lower court judges, from Adrian, Preston, and Atkins. Your ruling, and I need to clarify that, your ruling was exclusively focused on the operator, the Lincoln defendants. And whether it was waste. That's all it was. The issue was whether or not it met the definition of waste. What has been relied on in part, not exclusively because there are a lot of facts in this case to support these conclusions, but what all of the judges have focused on was your statement of certain facts relating to the owner defendants. Relating to the fact that they had set cease and desist notices. That they had joined in the request for a preliminary injunction. Ms. Wander wasn't there. I was. That's why there's a stipulation between us and the Attorney General's office that we did in fact join in that motion at the very beginning of this case. But just saying that this contract was not against public policy, that doesn't get you off hook. It absolutely doesn't. Because you do have to determine whether or not we had any role in these illegal activities. No, it's not whether you had any role in these illegal activities. Whether you allowed them. No. Well, whether you allowed them, what's the standard for allowing? What do the cases tell us? First and foremost, Judge Ellis, you were right. There is no strict liability in Illinois. We have to have done something. What is that something? Capacity to control. Capacity to control. So let's talk about that one. We have an agreement. Just like every case that's ever been decided by the appellate courts, by the circuit courts, and by the IPCB. What does the contract say as between the owner and the operator? Because this isn't the first time this issue has come up. Because you're being asked to effectively overrule decades of precedent. What do all the cases say? They all say the owner who does not have a role in the illegal operations is not liable. Don't they say something a little different than what you're saying right now? They say an owner that doesn't have the capacity or ability to control. Sure. And all of those cases deal with usually it comes up in the context of a lease. We pointed that out in our brief. What about the purpose of the act? Why should you be able to essentially remove yourself from control by a contract you enter into with an otherwise illegal polluter? Because we didn't remove ourselves from control. And that's specifically the point that's being ignored here. Basically what you're being asked to do is ignore contract law. And you pointed it out to Ms. Lunder. Our contract specifically said you cannot operate illegally. You cannot but it wasn't just you can't operate illegally. You cannot operate without obtaining the requisite permits, whatever permits may be required from Illinois EPA. So let's step back for a moment and talk about before the suit was filed, that initial two year period. Shouldn't there be a trial on these issues of whether or not you had the capacity to control? No, there shouldn't be. By the actions that, whatever they say you're pre-knowledge, before the notice went out, that you decided you were going to allow or have a contract with a business that was going to be putting waste on your property and you made a decision that that's something you could do. So then you enter into an agreement and you're going to get paid money for this. And isn't your position basically that you can right away anything you want, I mean draft the right to not have to do anything in terms of what happens to your property simply because you enter into an agreement with someone else who's going to do exactly what the law does not permit? No, that's not my position. Alright. So first and foremost let's go back to the question that wasn't answered. Is there a case that supports the proposition that as soon as the agency issues a violation notice, we're on notice that we're doing something illegal and we have to stop? And I think you know not only is it in our breed I'm not aware of any case that says that No, it's actually there's no Supreme Court case that says exactly the opposite that's the National Marine case as we all know. It says exactly the opposite that doesn't put us on notice. It does have to be determined by people on that side of the courtroom. So even though there's no strict liability and even though these are not mental state offenses the state's principle argument is that we knew that something was being done illegally. I think the state's principle argument is you had the capacity to control it. Right. I think the case law is pretty clear that knowledge is not the question. Wasn't there a time in 2003 where there was another issue with a permit that wastewater discharge permit An NPDES permit. Correct. And we issued a notice In that situation the EPA came to you and said there's a problem with the wastewater discharge you need a permit tell me if I get this wrong counsel you've got a record better than I do. Right. And then you sent a letter to Lincoln you being of course your client sent a letter to Lincoln and said you must you must fix this problem and get a permit or we will demand that you cease operation. Correct. And then Lincoln did. They got the permit. Exactly. So you had the ability in that case to demand that they do something and they followed your demand. Correct. Okay. Correct. Is that not the capacity to control? No. Why not? Two reasons. First let's look at the exact same thing that we did when it came to this issue. Two cease and desist notices ignored. Joining in a preliminary injunction motion which ultimately wasn't called up for hearing by the state until three years after they filed it. Ignored. A demand for arbitration ignored. We file a motion to compel arbitration finally granted. We get into arbitration the arbitration entity that's identified in the contract ceases to operate we go back in the court to seek relief from that and file a counterclaim seeking the same injunction that they were in their complaint. So aren't these all questions of fact as to whether or not you really had the ability to control or not control? Except that by virtue of the fact that we filed cross motions for summary judgment we've all acknowledged that the facts are completely undisputed. You have every fact in this case that could ever be elicited. Right. But the question is whether or not those facts, if any of those facts, suggest that you allowed under the case law the illegal pollution or whatever you want to call it the allowance of the deposit of what has been determined by another court, this court that it was waste. And Judge Atkins along with Preston already made that determination based on all of those undisputed facts. Both of those judges, but let's talk about the one that's being appealed today which is Judge Atkins based on all of those undisputed facts. There aren't any others. We know everything that could possibly be known in this case. I want to step back for a second because there's two facts that haven't been identified here apart from their failure to discuss the stipulations. Two critical facts during that time period that we're talking about 02 to 04 when we get that violation notice and we tender the notice per the agreement that we have to link it, to deal with it and if it's illegal then stop. What is the evidence as to what my clients knew were aware of whatever you want to call it two very critical facts number one, the statute that the notice of violation derived from had been declared unconstitutionally vague. It was reversed. Which was reversed in 2004 remember that, April 2004 which is it doesn't take a great leap of logic to understand why they didn't file this lawsuit until four months later in August of 2004. So number one, it was reversed. Number two, and this was provided to the agency in response to that violation notice not by us, obviously by the operator a letter from LLEPA the entity that issued the violation notice that specifically said that this type of operation did not require a permit. That is also in the record has never been addressed. That's what we knew. Whatever you call it, that's what we knew. I want to go back to this. So there was an example that I gave you before where you were able to basically order Lincoln to get a permit and they did. How is that different from this situation? What I heard you say, and maybe I'm wrong is that the differences with this permit they wouldn't go along with it. But how is that a distinction that makes any difference? Because it's a question of what is it that we have the capacity to do? What is our capacity to control them? Wasn't that other example an example of you having the capacity to control? That was an example of exactly the same thing we did here. We issued a cease and desist order because you don't have the proper permit. They said, okay, we'll fix it. Well, if you had the ability to control them then I guess Land of Lincoln should have just done what you said. But actually they refused, didn't they? Land of Lincoln refused when you requested that they do something about this particular waste, right? They refused then you tried to go to arbitration you went to arbitration, then you're arbitrator. Now I'm saying I don't know how that instance would determine as a matter of law that you had the ability to control when later you obviously had no permission. Unfortunately the names are similar and I cringe, that's why I like to call them the operators Oh, I'm sorry. It's Land of Lincoln and Lincoln so I cringe a little bit at that. It has such a nice ring to it. It certainly does. But that's exactly the point, Judge Ellis. Did we have the capacity to control? Only if they let us. Because if they didn't so in that instance in 2003 no NPDES permit so the NPDES permit is an example where you had the capacity to control. No. I thought you just said it was. No. It's an example of our ability to say comply with the contract and get the permit that you're required to have and they said yes. If they had said no we would have had the same. That can always happen. This contract could have been written such that you could have said in the contract we have the ability to force you to get a permit. It didn't say that. But it could have. And I think we would all agree that's giving you control. But they still could have knocked on a wall. Excuse me. I'm sorry. If people don't go along with something you do whatever you have to do. You can't bring a militia onto the property and force them to do it but you go to court or in this case you go to an arbitrator. If a landlord is ordering a tenant to do something in a contract and the tenant won't do it I don't think that means the landlord doesn't have the ability to control it. It just means that because the tenant is being possibly unreasonable in doing so you go to court. You seek your remedy. I don't understand the distinction based on in the one case Lincoln complied and in the other case Lincoln didn't. You either had the capacity to control and all the force that goes behind that possibly going to an arbitrator or court or you didn't. How could you have had it in the one case and not in the other? I suppose it's a question of what you consider capacity to control. We had the capacity to demand. We didn't have the capacity to then get a court or an arbitrator to order to enforce the contract. Correct. Is that capacity to control? It did happen in this case only if a judge agrees that they were operating illegally. We ultimately did obtain summary judgment against. Well sure if you're wrong on the merits then the court's not going to order it. If you order them to get a permit and you go to court and the court says I don't think they need a permit. But that's not lacking capacity to control. That just means you were wrong on the merits. The issue truly is if I have this contract or any contract a lease for example and I just want to talk about Speedy Gonzalez for just a second that was as you all know one of the silver shovel cases. The critical fact that Ms. Wunder described that as their number one case the facts were really laid out in the IPCP decision not in the your decision, the appellate court decision. Owner was in control of the site and did not lack the capability of controlling the pollution. Owner retained hauling company and directed hauling activities. As you know by the stipulations that doesn't exist here. Every other case that they cite has exactly those types of facts where the owner was involved in operations. I just wanted to do that on the side because I'm out of time. Can you cite a case where the land owner, a land owner was not found liable under this act? Was found not liable under this act? Yes, absolutely. We've cited a bunch of them in our Wasn't that Phillips? A land owner? Yes, the land owner. Oh, property owner. Excuse me. Any number of them. Phillips was in Gaslink on a train. Oh, people versus William Charles Investment. Owner of disposal site was not jointly liable with site operator for conducting a waste disposal operation. IAPA versus Lake County Grading. Lessors were merely the land owners who leased the land to the lessee and they do not have any control over the operation of the lessee. What was the first case? I'm sorry. Just tell me the name of it. Sure, it's people versus William Charles Investment. Okay, that's fine. The second one was people versus Rainberger and Berger. These are all in our This one was IAPA versus Lake County Grading. City of Morris, Community Landfill is another one. And then if we look at actually I'll cite to one of the cases that the state cited. People versus Berger and Berger Waste Management. This one asserted claims against both the owners and the operators. But in that case, Berger was the owner of the corporation and the wasn't he? He was. But Titlehead devolved down to a separate corporation BWM. And this is the critical language under that case. BWM's involvement is only as an owner. Therefore, BWM is not liable for the violations. We're talking about cases dating back to the early 1980s and they've been completely consistent. So getting back for a moment and I've run way over but getting back for a moment again to this issue of capacity to control that one permit issue versus the other permit issue. Could we control them or did we have to ask a court to control them? If we have to ask a court to control them if we can't go on site or call the militia or put up K-rails which we can't do as you know legally regardless of the fact that illegal operations are going on our site all we can do all that we are legally entitled to do is exactly what we did in this case. Legally entitled based on a contract that you drafted? And the law. And the law. You couldn't have given yourself the right I mean there are other places in this royalty agreement where you gave yourself the right to come onto the land. I mean you certainly had a key to the front door. You were able to go in and check the books to make sure you were getting your royalties properly. You had the right to go in there and stand there and watch them do it. You didn't give them yourself the right to come on the property and make sure that they were complying with all permits but that's because of how it was written. I don't think we needed to put that in there because we would always have that opportunity based on the fact that we required them to operate legally. This contract didn't have to say you're obligated to get all permits required and we have a right to come on site and determine that you did. We have that right no matter what. You had the right to come on the property at any time to make sure that permits were being complied with. Absolutely. And the point was between 2002 when this agreement was entered into and April 2004 when the Supreme Court said no this statute is not unconstitutionally vague and ultimately not until 2007 when I've lost track of which judge actually entered a summary judgment on liability against the operators it was not until then consistent with National Marine that a judge finally said this operation is illegal. Alright, Mr. Blaser. Thank you for your comments. Ms. Wunder, brief rebuttal. There's a lot I'd like to respond to and I'll try to get through the points. Mr. Blaser said that four judges have already determined the issue of whether the owners are You can forget that. We're not bound by it. This is a de novo review. Of course. It is a de novo review and that was not the issue. Any of those judges were looking at other issues about whether it involved a remedy agreement whether the contract was void against public policy just happened to have that language. So that's it. Mr. Blaser also said that we're effectively overriding decades of precedent and that's not the case. He didn't give you those decades of precedent. When asked about the cases are there any cases that would say that a landowner is not liable in these circumstances, none of the cases he cited, and these are all discussed in more detail in the briefs, none of the cases he cited hold anything of the kind. None of those cases involve the question here of an owner's violation of a statute through causing or allowing open dumping of waste. William Charles in fact recognizes that there might be a defense if there is some kind of really unforeseeable event. There was a 500 year reign but if anything it suggests without that type of event there would be liability. Burger, operational violations doesn't really discuss owner liability. Lake County grading doesn't discuss owner liability at all. It's the approval of a settlement agreement for operational violations between the agency and the operator. Morris is about who's an operator. Gonzales is relevant here, very relevant because it tells you the capacity control standard. The facts are not out in all fours in one sense that the owner there supervised some activities and that goes to one part of it but the owner's duty to clean up waste that's put there by others. It's very clear at that point and then that's an owner's duty. So I think our position flows very readily from the case law that's out there and also from the statute. It is statutory language that's very clear and that statute should be given a liberal interpretation and the statute should be construed as a whole with the other provisions. So I think our position follows very readily from the existing law and it's also good public policy. I think it would be troubling if a land owner in these circumstances could simply shift their environmental responsibilities and continue to collect dumping royalties by saying oh that person's going to take care of all of that and yes I know you sent me a notice that says they didn't take care of all of that but my contract says they're supposed to do it. The contract and the statute are separate. And then they have a cause of action against their contractual partner. Hey you were supposed to do these things and you didn't but that doesn't get them out of their statutory obligations. Are you talking about section 45 D? That was what I was talking about is the statute as a whole that provisions these types of actions. And that statute says if the owner of real property is held liable they can bring in third party dumpers and it outlines the circumstances. You were asking about the September 2003 example of well didn't they send a demand letter then about a different permit? Yes they did and I think that shows they know how to send a demand letter when they wanted to. That is a step they could take that demonstrates that they had control over the source of the pollution. The source of the pollution was the use of their land as an unpermitted dump. And that draws in, they didn't have to do that deal. They didn't have to structure the contract that way. They can't use the contract as an excuse. They brought out a couple of facts saying well the definition of waste had been declared unconstitutional. I think that's a misplaced reliance argument. I think it was about first of all it was addressing different issues. It was addressing the vagueness of whether a criminal statute was vague but more to the point that was a circuit court decision that did not create any precedential value or legal effect in any other case. And if they wanted to say well we don't think a permit is needed because we're relying on what the circuit court judge said then again that is a choice that they are making but they were wrong and that doesn't excuse them from liability. You're going to have to sum it up now. 1996 letter, it's addressed, did not address the site. I don't think we need to decide whether they need to call the militia because there's a lot they didn't do here short of calling the militia and again they cannot hide behind their contract. I think their issue of contract law is very questionable when they're somehow saying well even though the operator substantially breached this contract right off the bat we couldn't do anything. We had to sit here and just be bound by the terms of this contract. I think that's a questionable premise and again they decided on those terms they can't tie their own hands and say their hands are tied. Just to conclude overall they're suggesting there would be something far-fetched about holding a landowner liable for allowing open dumping in these circumstances and I think it's useful to kind of flip that equation and think well why wouldn't the landowner be liable in these circumstances? They have the ability to make discretionary choices about how their land is used and they have obligations to use the land in an environmentally responsible way. They have not taken steps to avoid pollution on their land or to remedy the pollution with the waste that sits there today and that establishes their liability. I think of it like a tax preparer. You can ask someone to prepare your taxes but if they don't do it it doesn't mean you can simply say oh they were supposed to do that and I don't have the obligation to do it also. Thank you.